IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. LORRAINE NOTORFRANSESCO | : : : | |
| Plaintiff-Relator, | : : | |
| | : | CIVIL ACTION |
| v. | : : | |
| | : | NO. 09-1703 |
| SURGICAL MONITORING ASSOC., INC. AND SPECIALTYCARE, INC., et al. | : : : | |
| Defendants. | : : : | |

MEMORANDUM

TUCKER, C.J.                                                                                                September 2, 2014

Plaintiff-Relator Lorraine Notorfransesco brings this qui tam action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3731, for allegedly fraudulent claims for federal healthcare reimbursements. Defendants Surgical Monitoring Associates and SpecialtyCare, Inc. filed a motion to dismiss pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6), 12(b)(1), and 31 U.S.C. § 3730(e). Upon consideration of the parties' submissions and for the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

I.      FACTUAL BACKGROUND

On April 2, 2012, Plaintiff Lorraine Notorfransesco initiated a qui tam action by Amended Complaint pursuant to the FCA after the United States Government declined to intervene. The States of New Jersey, New York, and Delaware are also named plaintiffs because

the alleged actions implicate their respective false claims laws.  *See* N.J. STAT. ANN. §§ 2A:32C-1-2A:32C-18; N.Y. STATE FIN. LAW §§ 187-194; DEL. CODE ANN. tit. 6, §§ 1201-1211.  Defendant Surgical Monitoring Associates ("SMA") specializes in intraoperative neuromonitoring ("IONM"), which identifies injuries to the brain, spinal cord, and other neural structures during surgery to enable immediate corrective action.  (Am. Compl. ¶¶ 8-9.)  In 2011, Defendant SpecialtyCare, Inc. ("SpecialtyCare") acquired SMA.  (*Id.* ¶ 8.)

SMA hired Plaintiff as an accounts receivable/collection specialist in 2006 and promoted her to billing manager in 2008.  SMA terminated Plaintiff's employment on October 28, 2008.  (Am. Compl. ¶¶ 5-7.)  Plaintiff alleges that SMA submitted false healthcare claims for federal funds by overcharging for IONM services, violating required conditions of payment, making false representations in the preparation, review, and certification of IONM reports, and knowingly employing and/or contracting with a physician whose license was revoked or suspended.  (*Id.* ¶ 4.)  Plaintiff bases her allegations on knowledge acquired during her employment with SMA.  (*Id.* ¶ 6.)

Plaintiff asserts that IONM services were "medically necessary" and therefore covered by federal funding in a variety of enumerated surgical procedures.  (Am. Compl. ¶ 35.)  A condition for payment required that the IONM be conducted by a physician who continuously monitors the IONM readings in real time either in the operating room or by digital transmission or closed circuit TV.  (*Id.* ¶ 36.)  IONM occurred only during surgery and was billed under a separate code to distinguish it from other baseline monitoring periods.  (*Id.* ¶¶ 39-41.)  SMA submitted bills for IONM services to insurance carriers, including Medicare Managed Care Organizations, Tricare, Federal Blue Shield plans, and many Medicaid plans (collectively "Federal Payors").  (*Id.* ¶ 51.)

2

Claims for Medicaid reimbursement were against both federal and state governments since Medicaid is a joint healthcare program.  (*Id.* ¶ 27.)

SMA allegedly overcharged Federal Payors by improperly using the IONM billing code for periods before and after surgery.  For six surgeries between 2007 and 2008, IONM charge sheets indicate surgery start and end times that are longer in duration than incision and close times in the Comment Summary Report.  (*See, e.g.,* Am. Compl. Ex. B at 3, 18-19.)  It is disputed whether the charge sheets determined billings and whether Federal Payors received these bills.

SMA also allegedly billed for remote IONM services at hospital locations without remote connections.  Prior to 2007, no Lehigh Valley Hospital facility had remote connection capabilities.  (Am. Compl. ¶ 56.)  In 2007 and 2008, two of three Lehigh Valley Hospital facilities, A.I. Dupont Hospital, and Brandywine Hospital did not have remote connection capabilities.  (*Id.* ¶¶ 56-58, 60.)  SMA, however, allegedly billed for remote IONM services rendered during surgeries on August 18, 2006 at Lehigh Valley Hospital, on June 5, 2008 at A.I. Dupont Hospital, and on July 21, 2008 at Brandywine Hospital.  (*Id.* ¶¶ 61, 63, 73.)  These services were billed under SMA employee Dr. Onile Sestokas who, because of lack of remote access, would not have been able to perform continuous real time monitoring as required for payment.  (*Id.*)  Again, it is disputed whether these charges were billed to Federal Payors.

SMA allegedly made false representations in its reports about the person listed as having provided IONM services in a particular case.  On or about May 29, 2008, Plaintiff asserts that Melissa Hanley, SMA Director of Business Operations, asked Plaintiff to falsify names on medical claims.  (Am. Compl. ¶ 65.)  On a number of occasions, a patient was billed under Daniel Schwartz even though he did not conduct that patient's monitoring, including a surgery

3

that took place on October 9, 2008 when Schwartz was on vacation.  (*Id.* ¶ 68.)  Because Federal Payors would only reimburse costs of services performed by physicians, SMA was aware of which plans recognized Dr. Onile Sestokas, a qualifying physician, but did not recognize Daniel Schwartz, an audiologist and SMA's president and CEO.  (*Id.* ¶ 68.)  Thus, Dr. Sestokas's name allegedly appeared on IONM reports created before she was hired.  Her name also appeared on the bills for cases monitored by Dr. Mark Fleischer, who worked for SMA between February and August 2007.  (*Id.* ¶ 75.)

Plaintiff asserts that Dr. Fleischer was employed and/or contracted by SMA though his medical licenses were revoked or suspended.  Dr. Fleischer had surrendered his medical license in New York prior to working for SMA.  (Am. Compl. ¶ 75.)  His New Jersey license was suspended in August 2007 for, among other reasons, a conviction for submitting insurance claims for non-rendered services.  (*Id.*)  It is disputed whether SMA knew of Dr. Fleischer's suspended license during his employment.

On October 28, 2008, Plaintiff was terminated from SMA's employ.  (Am. Compl. ¶ 7.) Prior to her termination, Plaintiff assisted in an audit by Independence Blue Cross, which allegedly uncovered numerous false and fraudulent billing practices.  (*Id.* ¶ 88.)  It is disputed how and whether the unfavorable audit prompted Plaintiff's termination.

After her termination, Plaintiff sought unemployment benefits from the Pennsylvania Department of Labor Unemployment Compensation Board of Review ("Board").  (Defs.' Mem. in Supp. of Mot. to Dismiss 16).  On February 6, 2009, in an administrative hearing before the Board, SMA employees and Plaintiff testified about the circumstances surrounding Plaintiff's termination.  (*Id.* Ex. E.)  The testimony addressed facts surrounding the Independence Blue

4

Cross audit, including the revelation that service reports and billing forms did not match. (*Id.* Ex. E, 7-13.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed an Amended Complaint in this Court individually and in the name of the United States and the States of New Jersey, New York, and Delaware (collectively "States") under the qui tam provisions of the federal and states' False Claims Acts. *See* 31 U.S.C. § 3730(b); N.J. STAT. ANN. § 2A:32C-5(b); N.Y. STATE FIN. LAW § 190(2)(a); DEL. CODE ANN. tit. 6, § 1203(b). Plaintiff filed on April 2, 2012 after the United States and States had declined to intervene on March 2, 2012. The Amended Complaint contains six counts: Count I alleges a violation of the federal FCA, Count II alleges a violation of the New Jersey False Claims Act, Count III alleges a violation of the Delaware False Claims Act, Count IV alleges a violation of the New York False Claims Act, Count V alleges a violation of the Pennsylvania Whistleblower Law, and Count VI alleges a violation of the retaliation provision of the FCA, 31 U.S.C. § 3730(h).

## III. STANDARDS OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 571 (2007)). When making its decision, the court accepts as true all facts alleged in the complaint and draws all reasonable inferences from them. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Adams v. Teamsters Local 115*, 214 F. App'x 167, 171 (3d Cir. 2007). Though a complaint need not contain detailed factual allegations, it requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."

*Ashcroft*, 556 U.S. at 678 (citations omitted).  A court may therefore take the facts alleged in the complaint as true, but need not consider legal conclusions contained therein.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

A motion to dismiss pursuant to Rule 12(b)(1) requires a different analysis than one pursuant to Rule 12(b)(6).  *See Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000) ("This Court has previously cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims. . . . This concern arises because the standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion" (internal citations omitted)).  In deciding a motion to dismiss under Rule 12(b)(1), the court must first determine whether the attack on jurisdiction is facial or factual.  *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).  If it is a facial attack, the court looks only to the pleadings and does so in the light most favorable to the plaintiff.  *Id.*  If it is a factual attack, the court may review evidence outside of the pleadings.  *Id.*  In the latter case, the burden rests on the plaintiff to establish jurisdiction.  *Id.*  A claim is dismissed under Rule 12(b)(1) only if it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous."  *Gould Elecs. Inc.*, 220 F.3d at 178 (internal quotation marks omitted).

## IV.   DISCUSSION

Defendants base their arguments for dismissal on various grounds, each of which this Court will address.  Defendant SpecialtyCare individually seeks dismissal for Plaintiff's failure to state a claim against it under Rule 12(b)(6).  Defendants SpecialtyCare and SMA argue for dismissal of Plaintiff's FCA claims under Rules 12(b)(6) and 9(b) for Plaintiff's failure to meet the pleading standard.  They also argue under Rule 12(b)(1) that the FCA imposes a bar on this

Court's exercise of subject matter jurisdiction.  Accordingly, they also seek dismissal of Plaintiff's state claims.

***SpecialtyCare is Dismissed as a Defendant for Plaintiff's Failure to State a Claim Against It***

Defendant SpecialtyCare argues that Plaintiff fails to plead facts sufficient to state a claim against it under Rule 12(b)(6).  The court may dismiss a claim pursuant to Rule 12(b)(6) if it is certain that no relief can be granted under any set of facts that could be proven.  *Adams*, 214 F. App'x at 171.

In her Amended Complaint, Plaintiff asserts that SpecialtyCare acquired SMA on or about October 11, 2011.  (Am. Compl. ¶ 8.)  Plaintiff alleges that SMA engaged in fraudulent activities that occurred no later than 2008, so it appears that Plaintiff bases her claims against SpecialtyCare on the doctrine of successor liability.

Regarding successor liability, Pennsylvania law is "well established that when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property."  *Schmidt v. Boardman Co.*, 958 A.2d 498, 504 (Pa. Super. Ct. 2008) (quoting *Cont'l Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005)).  This general rule has a number of exceptions that apply if: (1) the purchaser expressly or impliedly agreed to assume such obligations; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the transaction is fraudulently entered into to escape liability; (5) the transfer was not made for adequate consideration and provisions were not made for the creditors of the transferor; and (6) the successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner.  *Schmidt*, 958 A.2d at 504 (quoting *Childers v. Power*

*Line Equip. Rentals*, 681 A.2d 201, 212 (1996)).  Where successor liability is an acceptable basis for a claim, courts have dismissed a matter for failure to meet the Rule 12(b)(6) standard.  *See, e.g., Forrest v. Beloit Corp.*, No. 00-CV-5032, 2001 WL 1251460, at *2-3 (E.D.Pa. Sept. 21, 2001) (finding Plaintiff's pleadings to be inadequate to support a claim when the complaint merely asserted that Defendant was liable as a successor corporation because it acquired the manufacturer that sold an allegedly defective product); *Cave v. Saxon Mortg. Servs., Inc.*, Civ. Action No. 11-4586, 2012 WL 6209891, at *5 (E.D.Pa. Dec. 12, 2012), *vacated in part on recons.*, Civ. Action No. 11-4586, 2013 WL 460082 (E.D.Pa. Feb. 6, 2013) (dismissing breach of contract claim when Plaintiff failed to allege that all assets were sold or transferred to Defendant as required to state a claim under successor liability); *RP Baking LLC v. Bakery Drivers and Salesmen Local 194*, Civ. Action No. 10-3819, 2011 WL 2912861, at *3-4 (D.N.J. July 18, 2011) (dismissing a counterclaim for inadequate pleading of successor liability because Defendants had not shown that purchaser company had notice of seller's liabilities under a collective bargaining agreement and the Employee Retirement Income Security Act of 1974).

Defendant SpecialtyCare argues that the Plaintiff's allegation of liability through acquisition is a "threadbare recitation" of successor liability that falls below the standard required by Rule 12(b)(6).  (Defs.' Mem. in Supp. of Mot. to Dismiss 11.)  In her Amended Complaint, Plaintiff merely alleges: "Surgical Monitoring Associates, Inc. Was [sic] acquired by Specialty Care (Specialty Care) on or about October 11, 2011."  (Am. Compl. ¶ 8.)  The Amended Complaint makes no specific mention of wrongdoing by SpecialtyCare and it fails to include any facts that would make applicable any of the exceptions to the general rule.  The Amended Complaint neither describes the contractual agreement between SpecialtyCare and SMA nor explains their relationship or operations after the acquisition.  Without more, the

8

general rule against successor liability weighs in favor of SpecialtyCare's dismissal. For these reasons, this Court dismisses all of Plaintiff's claims with respect to SpecialtyCare. The following analysis applies to SMA, the remaining defendant ("Defendant").

***Plaintiff Supports her FCA Claim with Facts Sufficient to Satisfy the Higher Particularity Standard of Rule 9(b)***

Defendant moves to dismiss the Amended Complaint under Rule 12(b)(6) for failure to meet the higher particularity standard of Rule 9(b). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations in the complaint. *Amiriantz v. New Jersey*, 251 F. App'x 787, 788 (3d Cir. 2007). Allegations of fraud, such as those filed under the FCA, must meet the higher pleading standard of Rule 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

In *Foglia v. Renal Ventures Management, LLC*, the Third Circuit recently opined on the showing required to satisfy the particularity requirement of Rule 9(b) in an FCA case. 754 F.3d 153, 155-57 (3d Cir. 2014). It cited *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 308 (3d Cir. 2011), which stated that a plaintiff is not required to identify a specific claim for payment in order to state a claim for relief. *Foglia*, 754 F.3d at 156. The issue at the pleading stage is not whether a plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims. *U.S. ex rel. Wilkins*, 659 F.3d at 302. The FCA also does not require a specific showing of the content of a false claim. *See* 31 U.S.C. § 3730(b)(2) ("A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government.") Accordingly, the Third Circuit adopted a "nuanced" approach in which a sufficient pleading alleges "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that

9

claims were actually submitted." *Foglia*, 754 F.3d at 155-57 (quoting *U.S. ex rel. Grubbs v. Kannegati*, 565 F.3d 180, 190 (5th Cir. 2009)). If the plaintiff in an FCA action meets the higher pleading requirements of Rule 9(b), she has sufficiently stated a claim under Rule 12(b)(6).

Taking facts alleged in the Amended Complaint to be true, this Court finds that Plaintiff made a sufficient showing to satisfy the heightened particularity standard of Rule 9(b). The Amended Complaint clearly shows how, on a number of occasions, the charge sheets report longer surgery times than their accompanying Comment Summary Reports. *E.g.,* Am. Compl. Ex. B at 3, 18-19. It may be reasonably inferred that longer reported surgery times would lead to inflated claims for payment. Plaintiff also discusses cases in which reports falsely included names of persons who did not render IONM services, either because they were not available or because remote access was not possible. The requirement that physicians perform services may be reason for their inclusion on bills to Federal Payors. As an accounts receivable/collections specialist and billing manager, Plaintiff would have had reliable knowledge of SMA's billing activities. Thus, Plaintiff presents sufficient details of a scheme to submit false claims along with reliable indicia that such claims were submitted.

SMA disputes whether claims were *in fact* made to Federal Payors, but Plaintiff need not make such a showing to survive a motion to dismiss. Regarding Plaintiff's allegations that SMA knowingly employed Dr. Fleischer whose license was suspended, SMA argues that they are unsupported. Rule 9(b), however, explicitly allows general allegations as to a person's knowledge. Thus, the Amended Complaint sufficiently pleads facts to support a claim for relief for Count I arising under the FCA.

*Plaintiff Sufficiently Pleads a Claim for Relief Under 31 U.S.C. § 3730(h)*

Defendant moves under Rule 12(b)(6) to dismiss Plaintiff's retaliation claim arising under 31 U.S.C. § 3730(h).  The FCA states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  This provision broadly protects employees who assist the government in investigating and prosecuting FCA violations.  *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 185-86 (3d Cir. 2001).  A plaintiff asserting a claim under § 3730(h) must show that she engaged in "protected conduct" and that she was discriminated against because of this "protected conduct."  *Id.* at 186.  To be "protected conduct," an activity must have a nexus with the "in furtherance" prong of an FCA action.  *Id.* at 187 (citing *McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 515 (6th Cir. 2000)).  These activities may include internal reporting and investigation of an employer's false or fraudulent claims.  *Hutchins*, 253 F.3d at 187.

Plaintiff alleges that she was discriminated against when Defendant terminated her employment on October 28, 2008.  Plaintiff asserts that, prior to her termination, she had warned her supervisors about the company's billing practices, which created allegedly false claims to Federal Payors.  (Am. Compl. ¶¶ 87, 89.)  On or about August 20, 2008, she assisted in an audit by Independence Blue Cross by providing documentation that revealed fraudulent activity.  (*Id.* ¶ 88.)  Taking these facts to be true, it may be reasonably inferred that Plaintiff engaged in "protected conduct" by participating in internal reporting and auditing.  Plaintiff's termination,

11

which occurred approximately two months after her assistance with the audit, supports an inference of discrimination under § 3730(h) that is plausible on its face. Thus, the Amended Complaint sufficiently withstands a challenge under Rule 12(b)(6) with respect to Count VI.

***This Court Has Subject Matter Jurisdiction Notwithstanding the Public Disclosure Bar of the FCA***

Defendant moves to dismiss the Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. The attack is a factual one in that it concerns Plaintiff's failure to comply with the jurisdictional requirements of 31 U.S.C. § 3730(e)(4). *Atkinson*, 473 F.3d at 514. This Court may therefore consider evidence outside the pleadings in reviewing Defendant's motion to dismiss under Rule 12(b)(1). *Id.*

The FCA bars jurisdiction in certain actions, including those where the allegations comprising the FCA claim were based upon public disclosures in "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party". 31 U.S.C. § 3730(e)(4)(A). The sources of public disclosures which trigger the jurisdictional bar include administrative hearings occurring at federal, state, and local levels. *Graham Cnty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 293 (2010). An allegation in an FCA action is "based upon" a public disclosure if it is supported by *or substantially similar* to the publicly disclosed allegations and transactions. *Atkinson,* 473 F.3d at 519 (citing *U.S. ex rel. Mistick PBT v. Hous. Auth. of City of Pittsburgh*, 186 F.3d 376, 385-88 (3d Cir. 1999), which rejected the narrow reading of "based upon" to mean "derived from").

The public disclosure bar does not apply, however, if the relator was an "original source." 31 U.S.C. § 3730(e)(4)(A). To be an "original source," a relator must have knowledge that is independent, in that it does not depend on public disclosures, and direct, in that it was not obtained by any intervening agency, instrumentality, or influence. *Atkinson*, 473 F.3d at 520.

An original source relator must also have shared publicly disclosed information with the U.S. Government prior to the disclosure or have knowledge that is independent of and materially adds to the public disclosure.  31 U.S.C. § 3730(e)(4)(B).  The purpose of the original source exception is to encourage those with firsthand knowledge of fraudulent conduct to come forward.  *Atkinson*, 473 F.3d at 520 (quoting *U.S. ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 703 (8th Cir. 1995)).

Defendant is correct in arguing that Plaintiff publicly disclosed allegations and transactions of fraud in her administrative proceedings with the Pennsylvania Unemployment Compensation Board of Review ("Board").  In her e-mails to the Board, Plaintiff disclosed information that is substantially similar to the allegations underlying her FCA claim:

- "[T]here were over 1,000 reports sitting in the database, where Dr. Sestokas had lost the ability for remote connection during the procedure" (Def.'s Mot. to Dismiss, Ex. D, ¶ 1);
- "[I]t had been revealed to me that we could not connect remotely with at least two hospitals" (*Id.*);
- "[A]lmost all insurance carriers, including federally funded ones, require the ability for 'digital transmission of data in real time'" (*Id.*);
- "I must also admit I had suspicions and concerns that there may have been other hospitals where we could not remotely connect and transmit in real-time" (*Id.* ¶ 2);
- "I had grave concerns they may have intentionally misrepresented themselves to obtain reimbursement to which they would not otherwise be entitled" (*Id.* ¶ 7);
- "[SMA] is relying on the hope that because [Dr. Fitzpatrick] is the medical director, they can bill under her name as supervising physician . . . This however is definitely not in compliance with Blue Cross guidelines, nor almost every insurance carrier in the country" (Def.'s Mot. To Dismiss, Ex. F, ¶ 7).

Testimony from Plaintiff's hearing with the Board also discloses similar information:

- "[W]hat we found was . . . that our system was broken because the scheduler wasn't always putting the remote consultant or the doctor's name that goes on that billing form" (Def.'s Mot. to Dismiss, Ex. E, 11);

- "If there was no doctor listed, we were supposed to just use Daniel Schwartz, audiologist who is not a covered provider by almost every large insurance carrier" (*Id*. at 22).

The Plaintiff's action, however, is saved by the original source exception. Plaintiff's knowledge is independent in that it does not rely on public disclosures. Rather, she learned of alleged fraudulent activity in her duties as SMA's billing manager. Her knowledge is also direct, though it is unclear what degree of influence the Independence Blue Cross audit had on the uncovering of false billings. It is true that Plaintiff did not bring the information to the U.S. Government until after the public disclosures of her Board hearing, but this is irrelevant. Plaintiff qualifies under the original source exception because she has independent knowledge that Federal Payors were *over*charged, which materially adds to the publicly disclosed allegations. At no point during Plaintiff's Board proceedings was there mention of billing for longer surgery times than actually occurred, which is an allegation appearing only in the Amended Complaint. Thus, this Court has subject matter jurisdiction notwithstanding the public disclosure bar of the FCA. Defendant's motion under Rule 12(b)(1) is therefore denied as to Counts I and VI.

***This Court May Exercise Jurisdiction Over State Claims Brought Under the False Claims Laws of New Jersey, New York, and Delaware***

Defendant moves to dismiss Counts II, III, and IV for lack of supplemental jurisdiction. District Courts may rely on two federal statutes to exercise supplemental jurisdiction over state law claims related to federal FCA claims. The first, 28 U.S.C. § 1367, provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14

28 U.S.C. § 1367(a). This codifies the principle that supplemental jurisdiction is permissible when federal and state claims derive from a common nucleus of operative fact and allow the conclusion that the entire action comprises one constitutional case. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The second statute, found in the FCA, clearly permits the exercise of supplemental jurisdiction: "The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730." 31 U.S.C. § 3732(b).

This Court may exercise jurisdiction over Plaintiff's claims arising from the laws of New Jersey, New York, and Delaware. It has original subject matter jurisdiction because Plaintiff's FCA claim arises under federal law and the FCA's public disclosure bar does not apply. The facts supporting Plaintiff's FCA claim also support her state claims because claims for Medicaid reimbursements go to both federal and state governments. Because the facts underlying the Plaintiff's FCA and state claims are of the same transaction or occurrence, this Court exercises proper supplemental jurisdiction over Counts II, III, and IV.

***Plaintiff Fails to State a Claim for Relief Under the Pennsylvania Whistleblower Law Because Defendant Is Not a "Public Body"***

Defendant moves to dismiss Count V of the Amended Complaint, which arises under the Pennsylvania Whistleblower Law, 43 P.S. § 1423, ("Whistleblower Law"). The Whistleblower Law applies to all employers that it defines as a "public body." *Id.* § 1422. One definition of "public body" is "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority . . . ." *Id.* The Pennsylvania Supreme Court has not directly ruled on the issue of whether an entity is a "public body" simply because it receives money through a federal,

15

state, or local assistance program.  Accordingly, though not dispositive, the decisions of state appellate courts should be accorded significant weight in the absence of any indication that the highest state court would rule otherwise.  *Bickings v. NHS Human Servs.*, Civ. Action No. 13-2894, 2014 WL 307549, at *4 (E.D.Pa. Jan. 27, 2014).  Different courts, however, have arrived at different conclusions as to whether receipt of Medicaid reimbursements makes a private entity a "public body" under the Whistleblower Law.  In *Cohen v. Salick Health Care, Inc.*, the District Court concluded that it was not the intent of the Pennsylvania legislature to include all Medicaid healthcare providers as funded public bodies.  772 F.Supp. 1521, 1526-27 (E.D.Pa. 1991).  The Superior Court of Pennsylvania, however, rejected *Cohen* and held that the Whistleblower Law covers both appropriated and "pass-through" funds, such as Medicaid reimbursements, in defining a public body.  *Denton v. Silver Stream Nursing and Rehab. Ctr.*, 739 A.2d 571, 576 (Pa. Super. Ct. 1999).  More recent cases from District Courts, however, agreed with *Cohen* in predicting that the Pennsylvania Supreme Court would not find receipt of Medicaid reimbursements to be sufficient in making an otherwise private entity a public body for the purposes of the Whistleblower Law.  *See, e.g., Bickings*, 2014 WL 307549, at *5-7; *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 742-44 (E.D.Pa. 2011).  In *Tanay v. Encore Healthcare, LLC*, the court stated, "The words 'funded in any amount by or through' are naturally read to denote money that is specifically appropriated by a governmental unit.  Such appropriations . . . are not controlled by the whims of patients eligible for Medicaid."  810 F. Supp. 2d at 743-44.  This Court finds this to be persuasive and accordingly adopts the reasoning of *Tanay* to find that a private entity is not rendered a "public body" under the Whistleblower Law merely by receiving Medicaid reimbursements.

Plaintiff alleges that SMA is covered under the Whistleblower Law because it receives Medicaid reimbursements. As discussed, this is not sufficient to put SMA, an otherwise private company, under the law's coverage. Thus, Count V of the Amended Complaint is dismissed under Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion is granted with respect to all claims against SpecialtyCare. With respect to SMA, Defendants' motion is granted as to Count V and denied as to Counts I, II, III, IV, and VI. An appropriate order follows.