IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. : <br> LORRAINE NOTORFRANSESCO : <br> : <br>       **Plaintiff-Relator,** : <br> : <br>       v. : <br> : <br> SURGICAL MONITORING ASSOC., : <br> INC. AND SPECIALTYCARE, INC., et al. : <br> : <br>       **Defendants.** : | **CIVIL ACTION** <br><br> **NO. 09-1703** |

**MEMORANDUM**

**TUCKER, C.J.**                                                                                           December 12, 2014

      Defendant/Counterclaimant Surgical Monitoring Associates, LLC ("SMA") brings claims against Relator/Counter-defendant Lorraine Notorfransesco for breach of contract, implied contract, and promissory estoppel on the basis of Notorfransesco's alleged disclosure of confidential SMA materials.  Notorfransesco moved to dismiss SMA's counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the following reasons, Notorfransesco's motion will be DENIED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

      From 2006 to 2008, Notorfransesco was an SMA employee.  She worked as a Billing and Collections Specialist and, after a promotion, as a Billing Manager.  (Def.'s Countercl. ¶ 4, Doc. 53.)  On June 5, 2008, Notorfransesco entered into a written confidentiality agreement with SMA.  (*Id.* ¶ 6.)  The agreement stated, "Employee shall hold all such confidential or proprietary information in the strictest confidence and not disclose it to any person or entity or use it except as necessary in carrying out employees [sic] work for Corporation."  (Def.'s Countercl. Ex. A., Doc. 53-2.)  In defining "Confidential - Protected Health Information," the agreement

1

enumerated various items of information, including names, any dates except year, telephone numbers, medical record numbers, and account numbers. (*Id.*) The agreement also defined "Confidential – Business Information" as "[i]nformation that must be protected from access by anyone other than those specifically authorized to have access based upon need-to-know to perform one's job." (*Id.*) Finally, "Private Information" was defined as "[i]nformation that is internal to the organization which is available to workforce members within the organization." (*Id.*) One example of "Private Information" was "client lists." (*Id.*)

On June 19, 2008, Notorfransesco also executed a "Receipt of Employee Handbook and Employment-At-Will Statement" acknowledging that she agreed "that it is [her] responsibility to read the Employee Handbook and to abide by all the rules, policies and standards set forth by [SMA]." (Def.'s Countercl. Ex. B, Doc. 53-3.) The Employee Handbook included, in a section titled "Standards of Conduct / Ethics," the policy that "[e]mployees shall protect and maintain the confidentiality of private information pertaining to the company and its employees." (*Id.*)

SMA alleges that at some time during Notorfransesco's employ, she removed from SMA's premises a variety of confidential information for purposes not in connection with or for the benefit of SMA's business. (Def.'s Countercl. ¶ 9.) On December 1, 2008, Notorfransesco allegedly contacted Mr. Brian Lux, an employee of SMA, and indicated her intention to disclose confidential information to SMA's direct competitors. (*Id.* ¶ 12.) After Lux reported this incident, SMA took legal action against Notorfransesco and, on December 22, 2008, the Delaware County Court of Common Pleas ordered a Preliminary Injunction ("PI") against Notorfransesco prohibiting her from communicating with SMA's employees, patients, and customers, among others. (*See* Def.'s Countercl. Ex. D. ¶ 1, Doc. 53-5.) The PI also prohibited Notorfransesco from taking any other action that could "impair, limit, restrict, or hinder [SMA's]

contracts, current business operations or prospective business operations[.]" (*Id.* Ex. D ¶ 2.) The PI Order, however, did not prohibit or prevent "any other legal remedies or rights, which [Notorfransesco] has or wishes to pursue against [SMA.]" (*Id.* Ex. D ¶ 3.)

On April 22, 2009, Notorfransesco filed under seal a qui tam complaint against SMA under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3731, for allegedly submitting fraudulent claims for federal healthcare reimbursements. After nearly five years, on March 18, 2014, the U.S. Government declined to intervene as plaintiff. (U.S. and States' Joint Notice, Doc. 18.) On April 3, 2014, Notorfransesco filed an Amended Complaint and SMA filed its Answer and Counterclaims on October 1, 2014.

SMA contends that, by sharing confidential information with her attorneys and by filing her Complaint and Amended Complaint in the instant action, Notorfransesco violated her obligations and duties owed to SMA. (Def.'s Countercl. ¶¶ 14-17.) More specifically, SMA alleges that Notorfransesco's filing of an Amended Complaint "placed in the public record" confidential and proprietary information including patient records, invoices, billing records, and customer billing rates. (*Id.* ¶ 19.) SMA asserts that such disclosure of "commercially-valuable information" can lead to irreparable harm to its business. (*Id.* ¶ 22.)

Based on these allegations, SMA pleads three counterclaims: breach of contract, implied contract, and promissory estoppel. As relief, SMA seeks: 1) to bar Notorfransesco's use of confidential information in prosecuting the instant case; 2) an injunction restraining Notorfransesco from using SMA's confidential information and from engaging in activity that violates her contractual obligation to protect such information; 3) an injunction ordering Notorfransesco to return all property belonging to SMA; 4) an award of amounts paid to

Notorfransesco as employment compensation from and after the time she first disclosed confidential information; and 6) compensatory damages.

## II.     STANDARD OF REVIEW

Rule 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 571 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A court must accept as true all allegations contained in a complaint, but need not consider legal conclusions contained therein. *Id.* A court ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) is to apply the same standard as it does for a complaint. *Batoff v. Charbonneau*, Civ. A. No. 12-5397, 2013 WL 1124497, at *3 (E.D. Pa. Mar. 19, 2013).

The Third Circuit established a three-step analysis for assessing the sufficiency of a complaint. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). First, the court determines the elements a claimant must plead to state a claim. *Id.* Second, the court identifies and strikes allegations in the complaint that are mere conclusions and thus not entitled to the assumption of truth. *Id.* These include "unadorned, the-defendant-unlawfully-harmed-me accusation[s], labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertion[s]." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). And third, the court

should assess the plausibility of the remaining factual allegations to conclude whether they give rise to an entitlement for relief. *Bistrian*, 696 F.3d at 365. The plausibility requirement, however, "is not akin to a probability requirement." *Argueta*, 643 F.3d at 74 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

## III.   DISCUSSION

In her motion to dismiss, Notorfransesco contends that SMA did not plead facts sufficient to state a claim and SMA's counterclaim should be dismissed pursuant to Rule 12(b)(6). Under Pennsylvania law, an employee's duty to maintain an employer's confidentiality can arise from an express contract or be implied from the confidential employer-employee relationship. *See William M. Hendrickson, Inc. v. Nat'l R.R. Passenger Corp.*, No. 00-CV-3711, 2002 WL 398641, at *17 (E.D. Pa. Mar. 13, 2002) (discussing whether Amtrak owed a duty to maintain a contractor's trade secrets when no confidentiality agreement existed); *Macbeth-Evans Glass Co. v. Schnelbach*, 86 A. 688, 691 (Pa. 1913) ("The duty of the servant not to disclose the secrets of the master may arise from an express contract, or it may be implied from their confidential relations."). A breach of contract claim requires proof of (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *Kirschner v. K & L Gates LLP*, 46 A.3d 737, 755 (Pa. Super. Ct. 2012). In her motion to dismiss, Notorfransesco appears to take issue with whether SMA's counterclaim sufficiently pleads breach and damages. Notorfransesco also raises an argument that public policy precludes counterclaims such as SMA's.

First, Notorfransesco disputes the allegations that the information and documents she used in preparing and filing her FCA claim were confidential. Without this threshold showing, the argument goes, SMA is unable to prove breach of her confidentiality agreement. SMA responds that the confidentiality agreement, which was attached as an exhibit to its

Counterclaims, clearly and adequately describes the types of information and documents classified as confidential and private.  The Court agrees.  *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, the Counterclaim explicitly states that "[t]he patient IONM records, invoices, and hospital billing information attached to [the] Amended Complaint fall within the definition of 'Confidential Information' in the Confidentiality Agreement that Plaintiff/Relator signed." (Def.'s Countercl. ¶ 20.)  Indeed, courts have recognized such information to be protected trade secrets.  *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.* 247 F.3d 79, 107 (3d Cir. 2001) (stating that Pennsylvania law is clear that information like client lists, profiles, pricing information, and shipping information can be trade secrets).  Thus, the Court finds that, because the disclosures made by Notorfransesco were of confidential material, SMA sufficiently pled contractual breach.

Second, Notorfransesco argues that SMA's claims of damages are "bald boiler plate assertions" that fail to satisfy the pleading standard of Rule 8.  (Pls.' Mot. to Dismiss Countercl. at 8, Doc. 54.)  The Court disagrees.  In proving damages, a party "must show a causal connection between the breach and the loss." *Divenuta v. Bilcare, Inc.*, Civ. A. No. 09-3657, 2011 WL 1196703, at *7 (E.D. Pa. Mar. 30, 2011) (quoting *Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (Pa. Super. Ct. 1991)).  The Counterclaim states that information disclosed by Notorfransesco "could be used by competitors and other third parties to identify and seek out [SMA's] customers, undercut pricing, seek to damage [SMA's] reputation, or otherwise act to the competitive disadvantage of [SMA]."  Def.'s Countercl. ¶ 20.)  The Court finds that this allegation, taken as true, suggests the required element of damages.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's *Twombly*

formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This . . . 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element" (internal citations omitted)); *see also U.S. ex rel. Mossey v. Pal-Tech, Inc.,* 231 F. Supp. 2d 94, 99 (D.D.C. 2002) (finding that qui tam defendant's counterclaim for breach of contract sufficiently alleged damages under Rule 8(a)(2)).  Even if proving damages is unlikely, as Notorfransesco argues, the Court requires plausibility, not probability, for a pleading to stand.  *See Argueta*, 643 F.3d at 74.

Finally, Notorfransesco invokes public policy to argue that the purposes of the FCA would be undermined if SMA is allowed to proceed on its counterclaims.  Though the Third Circuit has not ruled on the issue, it is true that other courts have rejected counterclaims by qui tam defendants that would have had the effect of indemnity and contribution.  *See, e.g., U.S. v. Campbell*, Civ. A. No. 08-1951, 2011 WL 43013, at *10 (D.N.J. Jan. 4, 2011) ("FCA defendants cannot pursue claims for indemnification and contribution that are based on their liability under the FCA or have the same effect as offsetting FCA liability."); *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d. 20, 26 (D.D.C. 2007) ("The unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure.").  Courts recognize that allowing such counterclaims would discourage informers from bringing actions under the FCA.  *See Mortgages, Inc. v. U.S. Dist. Ct. for the Dist. of NV (Las Vegas)*, 934 F.2d 209, 213-14 (9th Cir. 1991); *Miller*, 505 F. Supp. 2d at 25; *U.S. ex rel. Rodriquez v. Weekly Publications*, 74 F. Supp. 763, 769 (S.D.N.Y. 1947).  However, counterclaims for "independent damages" are permissible.  *U.S. ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993); *Miller*, 505 F. Supp. 2d at 26-27.  "[C]laims by

an FCA defendant have been properly permitted where the success of the FCA defendant's claim does not *require* a finding that the defendant is liable in the FCA case." *Miller*, 505 F. Supp. 2d at 27.

Several courts have considered whether a counterclaim for breach of a confidentiality agreement should be barred on public policy grounds. In *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, the Ninth Circuit declined to adopt a blanket public policy exception to the enforcement of confidentiality agreements in FCA actions. 637 F.3d 1047, 1062 (9th Cir. 2011); *but see U.S. v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. Nov. 10, 2004) (finding that, after the defendant conceded the issue, "Relator could have disclosed the documents to the government under any circumstances, without breaching the confidentiality agreement"). The *Cafasso* court noted that if a relator were to assert such a public policy exception, she "would need to justify why removal of the documents was reasonably necessary to pursue an FCA claim." *Id.*, 637 F.3d at 1062. At times, courts have adopted the exception to prevent qui tam defendants from enforcing obligations that would require relators to return the documents that form the basis of an FCA action. *See, e.g., Seibert v. Gene Sec. Network, Inc.*, No. 11-CV-1987, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) ("The Court agrees that any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the False Claims Act—namely, the public policy in favor of providing incentives for whistleblowers to come forward, file FCA suits, and aid the government in its investigation efforts."); *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039 (C.D. Cal. 2012) ("Relators sought to expose a fraud against the government and limited their taking to documents relevant to the alleged fraud. Thus, this taking and publication was not

wrongful, even in light of nondisclosure agreements, given 'the strong public policy in favor of protecting whistleblowers who report fraud against the government.'" (internal citations omitted)); *U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009) ("Enforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the defendant who is under investigation would unduly frustrate the purpose of [the FCA].").

Notorfransesco argues that SMA's counterclaims are "thinly disguised claim[s] for indemnification," which would be prohibited under the FCA. (Pls.' Mot. to Dismiss Countercl. at 9, Doc. 54.) The Court disagrees. SMA's claim for breach of contract is a claim for independent damages because its success does not rely on a finding that SMA is liable under the FCA. *See Walsh v. Amerisource Bergen Corp.*, Civ. A. No. 11-7584, 2014 WL 2738215, at *7 (E.D. Pa. June 17, 2014) (ruling, in a factually-similar FCA action, that defendant's Amended Counterclaim alleging breach of contract, breach of fiduciary duty, implied contract, and promissory estoppel was not predicated on a finding of FCA liability and thus survived a motion to dismiss). SMA's requested compensatory relief does not have the effect of indemnification or contribution in violation of the FCA. *Cf. Mortgages, Inc.*, 934 F.2d at 214 ("Because there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."). In other words, SMA would have viable claims for breach of contract, implied contract, and promissory estoppel regardless of the outcome of the FCA action.

As for SMA's requested injunctive relief, the Court notes that prohibiting Notorfransesco's use of any confidential materials and demanding their return to SMA may be

improper if such materials are "reasonably necessary" to pursuing her FCA claim.  *See Cafasso, U.S. ex rel.*, 637 F.3d at 1062.  In such cases, "confidentiality policies must give way to the needs of FCA litigation for the public's interest[.]"  *Id.*  It is possible, however, that Notorfransesco is in possession of information that is not related to proving her claim, in which case SMA's requested injunctive relief would be appropriate.  *See Walsh*, 2014 WL 2738215, at *7; *Seibert*, 2013 WL 5645309, at *8.  Because it is too early for the Court to make such determinations, it cannot conclude that the counterclaim in its entirety should be dismissed on public policy grounds.

### IV.     CONCLUSION

For the foregoing reasons, the Court concludes that SMA has pled sufficient facts to state a plausible claim for relief and Relator/Counter-defendant Notorfransesco's Motion to Dismiss (Doc. 54) is DENIED.  An appropriate order follows.